FILED

# United States District Court
## Northern District of Alabama
### Southern Division

00 FEB 29  PM 2: 57

U.S. DISTRICT COURT
N.D. OF ALABAMA

Lola Benson, et al.,                          ]
                                              ]
    Plaintiff(s),                        ]
                                              ]
vs.                                           ] CV-99-N-3253-S
                                              ]
UNUM Life Insurance Company of America, ]
a corporation,                                ]
                                              ]           ENTERED
    Defendant(s).                        ]
                                                         FEB 2 9 2000

## Memorandum of Decision

This matter is before the court on motions of the plaintiffs to remand to the state court whence it was removed [Document # 6] and the defendant's motion to dismiss or strike the plaintiffs' claims for compensatory and punitive damages [Document # 3].[1] The plaintiffs here are the survivors of Sandra J. Mooney, the insured under a life insurance policy issued by defendant Unum Life Insurance Company of America. The matter has been briefed and the court conducted a hearing on Thursday, February 24, 2000.  The motion to remand will be granted and the motion to dismiss or strike will be carried with the case as it is remanded to the state court.

The question presented is a simple one, as is the answer. Is an ERISA covered plan created when an employer, who has no legal, ethical, or moral obligation to do so, gratuitously assumes the burden of paying the premiums, on what was apparently an ERISA covered life insurance policy, for a former employee who, during the period of

---

[1] The action was removed from the Circuit Court of Jefferson County, Alabama, pursuant to 28 U.S.C. § 1441 on the basis of the defendant's claim that the health insurance plan in question is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.



employment, becomes disabled and unable to pay the premiums for herself, even though she had paid the premiums herself during her period of employment?

For purposes of the motion, the facts are that the deceased was employed by the Medical Association of Alabama (MASA) prior to 1985. On or about April 9, 1985, Ms. Mooney became disabled and was unable to continue work because of a brain tumor. Her employment was officially terminated sometime in 1986. On a completely voluntary and gratuitous basis, MASA began to pay the premiums on a life insurance policy issued by Fidelity and Guaranty Company ("F & G")[2] and which was available to all MASA employees who chose such coverage. MASA employees, as well as Ms. Mooney until she became disabled, paid their own premiums on the F & G policy. In other words, MASA began making the premium payments for Ms. Mooney, but for no other employees.

In May of 1991, the F & G policy was replaced by one issued by Guarantee Mutual Life Insurance Company ("Guarantee Life"). Coverage under the Guarantee Life policy was available to the same persons who had been eligible under the F & G policy. MASA, still on a voluntary basis, continued to pay the premiums on the Guarantee Life policy for Ms. Mooney while all other MASA employees and physician members and their employees paid their own premiums. On or about September 11, 1991, MASA which had theretofore

---

[2] This was a life insurance policy issued to MASA as the policy holder in order to afford its employees an opportunity to obtain life insurance on a strictly voluntary basis. Coverage under the policy was also available to physician members and employees of such members.

2

been an association of Alabama physicians was converted to Mutual Assurance, Inc., a corporation.[3]

Sometime in 1994, the Guarantee policy was replaced with yet another insurance policy which, in addition to life coverage, included disability coverage (The "Principle" policy). All MASA employees were removed from the Guarantee policy and offered coverage under the Principle policy. Ms. Mooney, not being an employee of MASA, was ineligible for coverage under the Principle policy. She, member physicians, and their employees, were continued under the Guarantee policy. MASA continued to pay premiums on her behalf.

In October 1997 Guarantee informed MASA that it would not renew the group policy after January 1, 1998. Mutual Assurance Agency, a subsidiary of MASA, applied for and was issued an insurance policy from defendant UNUM. This policy, the one at issue here, is available "only to participating physician-insureds of Medical Assurance, *their* employees, and, as asserted by the plaintiffs in this action, Ms. Mooney." No employee of MASA or its associated companies is eligible for coverage under the UNUM policy. At the hearing on February 24, 1999, Linda Trigg of MASA gave uncontroverted testimony that she informed the UNUM representative who represented the defendant during the policy negotiations that any policy to be issued would have to cover Ms. Mooney.

UNUM argues that the group life insurance policy at issue here is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and, therefore, that any

---

[3]For clarity, the court will continue to refer to the employer as MASA.

3

dispute as to coverage under the plan is governed by the provisions of ERISA. State law claims, such as those presented here, are, according to the defendant, preempted. Defendant's argument, however, is defeated by the so-called "safe harbor" regulation promulgated by the Secretary of Labor, 29 C.F.R. § 2510.3-1(j). That regulation provides

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1)    No contributions are made by an employer or employee organization;
>
> (2)    Participation in the program is completely voluntary for employees or members;
>
> (3)    The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4)    The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

The evidence is that the UNUM policy was procured for the benefit of MASA's member physicians and *their* employees and that MASA attempted to include its former employee, Ms. Mooney, within the coverage to the policy. Moreover, going all the way back to the F & G policy, participation in each of the policies was entirely voluntary. There is no evidence that the role of MASA was anything other than to "publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer." Moreover, there is not evidence that MASA has received

4

any compensation other than "for administrative services actually rendered in connection with payroll deductions or dues checkoffs."

UNUM also argues that the health insurance plan at issue is "a 'plan, fund, or program'" under the Eleventh Circuit's decisions in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (en banc) and *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991) (applying *Donovan)*. The court, however, sees nothing in either of those cases by which the Court of Appeals rejected the "safe harbor" regulation. In fact, the *Donovan* court specifically acknowledged it, 688 F.2d at 1373, n. 11, suggesting that the decision there might have been different had the regulation been applicable to it.

Because there is no plan covered within the provisions of ERISA, there is no federal question jurisdiction. By separate order, the action will be remanded to the state court whence it was improvidently removed.

Done, this $\frac{29 \; \text{th}}{\text{of February, 2000.}}$

EDWIN NELSON
UNITED STATES DISTRICT JUDGE

5